JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: EAST COAST FOODS, INC. | CASE NO. CV 20-10982 MWF<br><br>ORDER RE: CONSOLIDATED APPEAL FROM THE UNITED STATES BANKRUPTCY COURT'S ORDERS |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Sheri L. Bluebond, United States Bankruptcy Judge). Appellant Clifton Capital Group, LLC ("Clifton Capital") appeals two orders of the Bankruptcy Court: (1) the Order Granting the Application for Payment of Final Fees and/or Expenses (the "Second Fee Order") in the amount of $1,155,944.71; and (2) the Order Granting Motion to Strike Declarations of John L. Sadd, Jed Sanford, and Sam White Filed by Clifton Capital Group, LLC ("Clifton Capital"), in Opposition to Trustee's Final Fee Application (the "Strike Order") (collectively, the "Orders"). The Bankruptcy Court entered the Orders in connection with its granting of the Fourth and Final Application for Compensation and Reimbursement of Fees and Expenses (the "Final Fee Application"), filed by Bradley D. Sharp, the former chapter 11 trustee (the "Trustee") in the bankruptcy case of East Coast Foods, Inc. ("ECF").

Appellant Clifton Capital submitted its Opening Brief ("OB") on February 2, 2021.  (Docket No. 15).  On May 14, 2021, Appellee Bradley D. Sharp, Chapter 11 Trustee, submitted his Reply Brief ("AB").  (Docket No. 16).  On June 11, 2021, Clifton Capital submitted its Reply Brief ("RB").  (Docket No. 23).  The Court has read and considered the papers filed in this appeal and held a Zoom video hearing on July 7, 2021.

For the reasons discussed below, the Court rules as follows:

- The Second Fee Order is **AFFIRMED**.  The Bankruptcy Court neither erred nor abused its discretion in awarding the Trustee a fee enhancement above the lodestar figure.
- The Strike Order is **AFFIRMED**.  The Bankruptcy Court neither erred nor abused its discretion in granting the Trustee's motion to strike Clifton Capital's declarations submitted in connection with its supplemental brief on remand because the Trustee did not introduce any new evidence in his supplemental brief.

## I. BACKGROUND

On November 18, 2018, the Bankruptcy Court granted the Trustee's Final Fee Application (the "First Fee Order"), on the basis that the requested fee was reasonable because it equaled the amount set forth under 11 U.S.C. § 326(a), or alternatively, because "this was an exceptional case" warranting compensation in excess of the lodestar figure.  *See In re East Coast Foods, Inc.*, CV 18-0098 MWF, 2019 WL 6893015 at *4 (C.D. Cal. Dec. 18, 2019).

On December 19, 2019, the Court entered the Order Re the Bankruptcy Court's Order (the "Prior Order"), reversing and remanding the Bankruptcy Court's order on the basis that Bankruptcy Court did not make detailed findings as to why the Trustee is entitled to an amount significantly higher than the lodestar figure.  (*Id.*).

1   In so doing, the Court held as follows:  (1) the lodestar approach is
2 "presumptively reasonable" for purposes of determining the Trustee's compensation
3 under 11 U.S.C. § 330; (2) the Trustee must "come forward with specific evidence
4 showing why the results obtained were not reflected in either his standard hourly
5 rate or the number of hours allowed" and "must also show that the bonus is
6 necessary to make the award commensurate with compensation for comparable
7 nonbankruptcy services"; and (3) if the Bankruptcy Court determines that a bonus is
8 justified, it must make detailed findings that actually support that determination.
9 (*Id.*) (citing *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 692 (9th Cir. 1988)).  The
10 Court also noted that "while the Bankruptcy Court observed that the Trustee faced
11 various challenges in this action, it is not clear why such considerations would not
12 have been encompassed in the lodestar figure, or would justify such a substantial
13 bonus."  (*Id.* at *4).

14   On remand, the parties provided supplemental briefing in light of this Court's
15 ruling, and the Bankruptcy Court held a continued hearing on the Trustee's Final
16 Fee Application (the "Fee Application").  At that hearing, the Bankruptcy Court
17 stated:

> It's difficult for a lower court on remand to adjudicate an issue when it firmly believes the appellate court made an error of law on appeal.  This court remains of the view that Congress intended for the compensation formula set forth in Section 326(a) to be presumptively reasonable and generally in the nature of a commission . . . and that the citations offered by the District Court are not on point.

(Excerpts of Record ("ER") 7-8) (Docket No. 16)).  The Bankruptcy Court nonetheless acknowledged that this Court's prior decision was "law of the case" and that the Bankruptcy Court "need[s] to follow it, but it kind of makes it a little bit — you know, I have to do it with a couple of brain cells tied behind my back.  It makes [it] a little more challenging."  (ER 8-9).

3

1  The Bankruptcy Court ultimately determined on remand that the lodestar amount in this case is $758,951.70 (the "Lodestar").  (ER 10-12, 30-31).  The Bankruptcy Court then awarded the Trustee compensation with the same fee enhancement as before, in the total amount of $1,155,844.71.  (ER 17-18, 42-44). The Bankruptcy Court also entered findings of fact and conclusions of law in support of the Second Fee Order.  (ER 45-100).  Finally, the Bankruptcy Court entered the Strike Order, striking certain declarations submitted by Clifton Capital. (ER 101-102).

The Court incorporates by reference the factual and procedural background set forth in the Prior Order as if fully set forth herein.  (*See* Prior Order at 2-4).

## II. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed de novo, and findings of fact are reviewed for clear error.  *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007).  Pertinent to this appeal, a bankruptcy court's award of professional fees "will not [be] disturb[ed] . . . unless the bankruptcy court abused its discretion or erroneously applied the law."  *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004).  "A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record." *In re Cook Inlet Energy LLC*, 583 B.R. 494, 500 (B.A.P. 9th Cir. 2018).

## III. LEGAL STANDARD

Pursuant to § 330, a bankruptcy court "may award to a trustee, . . . or a professional person employed under section 327 or 1103 (A) reasonable compensation for actual, necessary services rendered by the trustee . . . ; and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)-(2).

In determining reasonable compensation for a chapter 11 trustee, courts shall consider

> the nature, the extent, and the value of such services, taking into account all relevant factors, including — (A) the time spent on such services; (B)

4

the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankuptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3). Section 326(a) sets a statutory cap for chapter 11 trustee compensation depending on the amount disbursed to creditors. *Id.* § 326(a).

A trustee has the burden of demonstrating that its requested compensation is reasonable and satisfies these requirements. *See Hale v. United States Trustee* (*In re Basham*), 208 B.R. 926, 931-32 (B.A.P. 9th Cir. 1997).

The primary method used to determine a reasonable fee under § 330(a)(3) is to calculate the lodestar. *See In re Buckridge*, 367 B.R. 191, 201 (Bankr. C.D. Cal. 2007) (citing *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006); *Yermakov v. Fitzsimmons* (*In re Yermakov*), 718 F.2d 1465, 1471 (9th Cir. 1983)). The lodestar is computed by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

**IV.  DISCUSSION**

**A.  Standing**

As a preliminary matter, the Court rejects the Trustee's argument that Clifton Capital lacks standing to bring this appeal. (*See* AB at 43). In the Prior Order, faced with the exact same evidence and argument, the Court concluded that Clifton Capital had standing to bring this appeal because the record indicated that the estate did not have sufficient capital to pay all creditors:

> Although neither party provides case law directly on point on the issue, the Court finds Clifton Capital's argument to be more persuasive. Clifton Capital's claim is "subordinated to . . . all allowed and secured and unsecured claims and approved administrative expenses." (SER 46; AB at 15-16). This is important because to date, ***there is not sufficient capital to pay all creditors.*** Because the increased compensation to the Trustee will further subordinate Clifton Capital's claim, the Court concludes that Clifton Capital is directly and adversely affected by the Final Fee Order, giving it standing to pursue this appeal. *See Salomon v. Logan (In re International Envtl. Dynamics, Inc.)*, 718 F.2d 322, 326 (9th Cir. 1983) ("[I]n a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid."); *In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999) ("A creditor does . . . have a direct pecuniary interest in a bankruptcy court's order transferring assets of the estate.").

(Prior Order at 5) (emphasis added).

The Trustee acknowledges that the Court previously rejected this argument and that "no new facts have arisen that bear on this question." (AB at 4). Because the Court has already rejected this argument, the Court declines to address it in detail here. The Court is satisfied that Clifton Capital has standing for the same reasons set forth in the Prior Order.

### B. Specific Evidence in Support of Fee Enhancement

Clifton Capital argues that the Bankruptcy Court erred in awarding the Trustee a fee enhancement above the lodestar figure of $758,951.70 because the Trustee failed to show that (1) the bonus was necessary to make the award commensurate with compensation for comparable nonbankruptcy services; and (2) the quality of the results obtained were not reflected in its standard hourly rate or the number of hours allowed. (OB at 19-20) (citing Prior Order at 4).

In *In re Manoa Finance Co., Inc.*, the Ninth Circuit explained that "[t]here is a strong presumption that [an award based on the lodestar] was 'reasonable compensation.'" 853 F.2d at 692. Therefore,

> [i]n order to justify a bonus [beyond the lodestar figure], appellant must come forward with specific evidence showing why the results obtained were not reflected in either his standard hourly rate or the number of hours allowed. He must also show that the bonus is necessary to make the award commensurate with compensation for comparable nonbankruptcy services.

*Id.* "If the bankruptcy court determines that a bonus is justified, it must make ***detailed*** findings in support of that determination." *Id.* (emphasis added).

When granting a fee enhancement, courts may not rely on factors subsumed within the initial calculation of the lodestar. *In re Buckridge*, 367 B.R. at 204 (citing *Blum v. Stenson*, 465 U.S. 886 (1984)). Factors typically subsumed into the lodestar, and which cannot serve as an independent basis for an upward adjustment, include: (1) the novelty and complexity of the issues, (2) the special skill and experience of the professional, (3) the quality of the services, and (4) the results obtained. *Id.* at 202; *see also In re Manoa Fin. Co., Inc.*, 853 F.2d at 691. Because these factors are ordinarily accounted for in the lodestar figure, "they can support an upward adjustment only when it is shown by specific evidence that they are not fully reflected in the lodestar." *In re Manoa Fin. Co., Inc.*, 853 F.2d at 691 (citations omitted).

With respect to the first requirement — that the award be commensurate with compensation for comparable nonbankruptcy services — the Court notes that there is no direct analog to a chapter 11 trustee outside of bankruptcy, and there is no easy benchmark against which to measure. On the one hand, Clifton Capital points out that the Trustee repeatedly represented below that "[t]he rates provided are the normal hourly rates which [the Trustee] charges to its regularly paying, non-bankruptcy clients for similar services." (ER 933). On the other hand, the Bankruptcy Court reasoned that, outside of the bankruptcy context, a professional performing services similar to the Trustee might be entitled to a fee enhancement:

> Unlike with attorneys and other professionals who provide services outside of bankruptcy similar to those they provide in bankruptcy cases, there is no such thing as a chapter 11 trustee outside of bankruptcy. The closest analog may be a chief restructuring officer hired to run a company. It is not uncommon for such non-bankruptcy professionals to be entitled to success fees or bonuses when they deliver exceptional results. For a company such as the Debtor, a CRO could easily be entitled to additional compensation in the form of a success fee or bonus in excess of the fee enhancement sought by the Trustee in this case.

(ER 95).

The Court determines that this reasoning is sound, and that the Bankruptcy Court's conclusion therefore was not an abuse of discretion. *See In re Cook Inlet Energy LLC*, 583 B.R. at 500 ("A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record.").

With respect to the second requirement — that the quality of the result obtained was not already reflected in the Lodestar calculations — the Bankruptcy Court explained that this was an exceptionally difficult and complex case, and that the complexities of this case did not necessarily result in an increase in the number of hours spent by the Trustee and its staff. (ER 14). Specifically, the Bankruptcy Court found this to be an exceptional case for the following reasons:

> [t]he trustee assumed control over an operating business with several locations and was called upon to keep those restaurants operating in a profitable manner while dealing with the fact that there were effectively no internal controls, no reliable accounting methods or records, a toxic corporate culture that had resulted in large employee tort claims, years of unfiled tax returns and unpaid sales taxes, an owner who had siphoned off and was attempting to continue to siphon off estate assets and resources to benefit or support other business and his competing restaurants, numerous related party contracts and a principal who failed to cooperate in discovery or obey court orders. The analogy that comes to mind here is of the plate-spinners that used to appear on the Ed Sullivan show who worked furiously to keep multiple plates in the air at the same time.

(ER 86).

The Bankruptcy Court reasoned that, "[i]n light of the high level of expertise and experience required to perform these tasks in the manner in which they were performed," "[t]he number of hours spent working on the case is not a measure of the difficulty or skill level required to perform the required services in an exceptional manner." (*Id.*). The Bankruptcy Court specifically noted that, "if the complexities merely increased the number of hours that the trustee spent working on the case, this would be reflected in, and therefore compensated by, the lodestar calculation." (*Id.*).

Given that the complexity of the case and the special skill of the professional are typically subsumed into the lodestar, the question becomes whether the Trustee has shown "by specific evidence" that they are ***not*** fully reflected in the Lodestar. *See In re Manoa Fin. Co., Inc.*, 853 F.2d at 691.

The Bankruptcy Court's thorough analysis of the record demonstrates that the Bankruptcy Court relied on the specific evidence set forth above in concluding that the complexity is not accurately reflected in the Lodestar. This is a factual question and the Bankruptcy Court is in the best position to make this determination. Because the Bankruptcy Court's conclusion is based on specific evidence and is neither implausible nor illogical, the Court determines that the Bankruptcy Court did not abuse its discretion.

### C. Risk of Underpayment or Loss

Clifton Capital argues that the Bankruptcy Court erred by basing its award of a bonus to the Trustee on a risk of underpayment or loss. (OB at 22). Specifically, Clifton Capital argues that (1) risk of underpayment or loss cannot be considered as a matter of law under § 330; and (2) even if it could be considered, the record establishes that there was no risk of nonpayment in this case. (*Id.*).

With respect to the first point, *Burlington v. Dague*, 505 U.S. 557 (1992), and *In re Cedic Dev. Co.*, 219 F.3d 1115 (9th Cir. 2000), are instructive. In *Burlington*, the Supreme Court held that enhancements to the lodestar figure are not permitted based on risk of loss or contingency risk. 505 U.S. at 564-67 ("[E]nhancement for contingency is not permitted under the fee-shifting statutes at issue."). In *Cedic*, the bankruptcy court awarded a fee enhancement because the attorney's hourly rates did not take into account the results obtained or the risk of nonpayment. 219 F.3d at 1116. The district court reversed the bankruptcy court, interpreting *Burlington* as prohibiting enhancements based on risk of nonpayment. *Id.* The Ninth Circuit expressly rejected that reading of *Burlington*, reversed the district court, and reinstated the fee award. *Id.* at 1116-17. The Ninth Circuit distinguished Burlington as a case about contingent fees:

> *City of Burlington* is a case about contingent fees. It holds that the risk created by a contingency fee does not justify an increase beyond the lodestar. The case is not controlling here, because the risk of nonpayment by Cedic was not created by any contingency in the merits of the litigation but by the conduct of Cedic that suggested that it didn't like to pay its lawyers.

*Id.* (citations omitted). The Ninth Circuit explained "that the general principles applicable to fee-shifting statutes 'may require some accommodation to the peculiarities of bankruptcy.'" *Id.* at 1116-17 (quoting *Manoa*, 853 F.2d at 691).

Here, the Bankruptcy Court explained that the risk of underpayment stemmed from (1) the risk of the Trustee being awarded less in fees than the Trustee might be awarded on an hourly fee basis, and (2) the risk that the Trustee may receive only a pro rata distribution of fees if the estate has insufficient funds to pay for the full cost of services rendered:

> [I]n addition to the inherent risk of underpayment faced by all chapter 11 professionals, chapter 11 trustees face an additional underpayment risk because of § 326(a). In the Court's experience, because of § 326(a), chapter 11 trustees are very often awarded less fees than they

10

> would be awarded on hourly-fee bases.
>
> This was true in this case for the first two interim periods. For the first interim period, the Trustee requested fees of $252,997.09, while hours spent multiplied by hourly rates charged for non-trustee matters totaled $347,741.50. After the second interim period, the Trustee had been paid $524,184.36 pursuant to § 326(a), while hours spent multiplied by hourly rates charged for non-trustee matters totaled $566,133.00. If the case had faltered during those interim periods, the fee awarded would have been less than any amount calculated in accordance with hourly rates charged by the Trustee's firm for non-trustee matters.
>
> Because of § 326(a), chapter 11 trustees face a double risk of underpayment. First, the amount of fees awarded is very often less than the amount they would be awarded if their fees were based on hourly rates charged by their firms for their non-trustee services. Second, based on that already-reduced amount, the trustee may receive only a pro rata distribution. This double risk is not "priced into" the normal hourly rate charged by a firm for the trustee's non-trustee services.

(ER 88-91).

On the one hand, the inherent risk of underpayment here faced by all chapter 11 professionals does somewhat resemble a contingent fee: the Trustee's entitlement to a fee award here is contingent upon the quality of his performance because he may receive only a pro rata distribution of fees if the estate has insufficient funds to pay for the full cost of services rendered. The Bankruptcy Court explained that "this inherent risk of underpayment is already priced into the hourly rates identified by attorneys, accountants, and other estate professionals when they are being employed under § 327(a) of the Code." (ER 89).

On the other hand, the Trustee faces an additional risk of underpayment because of § 326(a): the Trustee may be awarded less in fees than he would be awarded on an hourly-fee basis. The Bankruptcy Court recognized that this "double

11

risk is not 'priced into' the normal hourly rate charged by a firm for the trustee's non-trustee services." (ER 91).

Given that the Trustee here faced two different types of underpayment risk, and that this "double risk" was not priced into the normal hourly rate, the Court determines that the risk of underpayment here is likely not the type of "contingent fee" that cannot justify an increase beyond the Lodestar pursuant to *Burlington*. *See Burlington*, 505 U.S. at 559 (a contingent fee is one where the party's attorneys assume "the risk of receiving no payment at all for their services"). This conclusion is consistent with the Ninth Circuit's determination in *Cedic* that "the general principles applicable to fee-shifting statutes 'may require some accommodation to the peculiarities of bankruptcy.'" 219 F.3d at 1116-17 (quoting *Manoa*, 853 F.2d at 691). Therefore, the Court determines that the Bankruptcy Court did not err by basing its Lodestar enhancement on a risk of underpayment or loss.

With respect to Clifton Capital's second point, Clifton Capital argues that there was never a ***real*** risk of underpayment here because the Trustee inherited "an operating, successful, and profitable business generating millions of dollars in revenue and more than sufficient funds to pay the Trustee and estate professionals." (OB at 24). Clifton Capital points out that, "[a]t the time of each of Trustee's four fee applications, the estate had more than enough cash on hand to pay not only the Trustee's requested fees and expenses, but all administrative fees and costs." (*Id.*). Clifton Capital is essentially arguing that the Trustee's job in managing the business here was not difficult enough to create a significant risk of the business becoming insolvent.

This argument does not even attempt address the specific factual findings set forth by the Bankruptcy Court as to why the managing the business was particularly difficult here:

> In light of the numerous challenges this trustee faced and the manner in which the trustee rose to the occasion to resolve these challenges,

producing exceptional results, this Court finds that the trustee utilized in connection with the administration of this estate levels of strategic thinking and diplomacy above and beyond those normally employed by a trustee in a chapter 11 case. The trustee assumed control over an operating business with several locations and was called upon to keep those restaurants operating in a profitable manner while dealing with the fact that there were effectively no internal controls, no reliable accounting methods or records, a toxic corporate culture that had resulted in large employee tort claims, years of unfiled tax returns and unpaid sales taxes, an owner who had siphoned off and was attempting to continue to siphon off estate assets and resources to benefit or support other business and his competing restaurants, numerous related party contracts and a principal who failed to cooperate in discovery or obey court orders.

(ER 86). In light of all of the difficulties faced by the Trustee, the fact that the estate had enough cash on hand to pay the Trustee's requested fees and expenses, as well as all administrative fees and costs, appears to *support*, rather than discount, the Bankruptcy Court's conclusion that the Trustee produced exceptional results under these circumstances. And Clifton Capital has failed to explain why the difficulties identified by the Bankruptcy Court did not put the business in any real danger of insolvency. The Bankruptcy Court's factual findings are supported by the record. Therefore, the Court is not convinced by Clifton Capital's conclusory assertion that there was no real risk of underpayment here.

Accordingly, the Second Fee Order is **AFFIRMED**.

### D. **Strike Order**

Clifton Capital argues that the Bankruptcy Court erred by striking the declarations that Clifton Capital submitted in response to the Trustee's supplemental brief on remand. (OB at 52). Specifically, Clifton Capital argues that it is entitled to present countervailing evidence because the Trustee's supplemental brief cited to evidence not previously submit in connection to the Final Fee Application. (*Id.*) (citing *In re Colusa Reg'l Med. Ctr.*, 604 B.R. 839, 852 (B.A.P. 9th Cir. 2019) ("Typically, a party must have an adequate opportunity to address the evidence

against it and an opposing party should have both the ability to do so in writing and to produce counterevidence.")). The Court disagrees.

Clifton Capital acknowledges that the Trustee's supplemental brief did not introduce new evidence. (OB at 53). The supplemental brief cited to the same evidence introduced in the Trustee's original reply brief, *i.e.*, evidence that was already in the record. (*Id.*) ("Clifton Capital took issue with these 'four pages of things' at the original hearing on the Final Fee Application, pointed out that the Trustee had raised new arguments and purported evidence in his reply, and requested the opportunity to respond before the Court ruled.").

When discussing this precise issue before the Bankruptcy Court on remand, Clifton Capital represented to the Bankruptcy Court that it was comfortable with the record as it currently existed, and that it would seek additional discovery only in the event that the Trustee attempted to provide additional evidence in the supplemental brief:

> So if we're limited to the record as is, we're comfortable with that. To the extent, however, that Mr. Sharp attempts to provide any additional evidence that's not currently in the record to support an enhancement, we feel that we should be entitled to discovery on that additional evidence, and then a supplement — and then a briefing schedule that's — flows from that.

(ER 2109). Because the Trustee's supplemental brief cited to evidence previously submitted in connection with its reply brief, the Trustee's supplemental brief did not introduce *new* evidence.

Even assuming that the Bankruptcy Court should have stricken the evidence submitted in connection with the Trustee's reply brief in the first place — a conclusion this Court does not endorse — Clifton Capital failed to raise this issue in its first appeal, and has therefore waived its right to make that argument here.

Accordingly, the Strike Order is **AFFIRMED**.

## V. CONCLUSION

The Second Fee Order is **AFFIRMED**. The Bankruptcy Court neither erred nor abused its discretion in awarding the Trustee a fee enhancement above the Lodestar.

The Strike Order is **AFFIRMED**. The Bankruptcy Court neither erred nor abused its discretion in granting the Trustee's motion to strike Clifton Capital's newly submitted declarations because the Trustee did not introduce any new evidence.

IT IS SO ORDERED.

DATED: August 6, 2021.

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court